GALVESTON CITY RAILWAY COMPANY v. JOHN G. HANNA.

Decided February 23, 1904.

**1.—Personal Injury—Negligence—Discovered Peril.**

Evidence considered and held to support judgment for personal injuries by being struck by a street railway car, where the motorman discovered plaintiff's peril but did not use ordinary care to stop the car in time to prevent injury, though plaintiff may have been guilty of negligence in going .upon the tracks in front of the car.

**2.—Same—Deafness.**

Though a motorman did not know of plaintiff's deafness he should have used ordinary care to prevent injury by checking the car when he saw that plaintiff took no heed of his warnings.

Appeal from the District Court of Galveston. Tried below before Hon. Frank M. Spencer.

*Terry, Ballinger, Smith & Cavin,* for appellant.

*James B. & Charles J. Stubbs,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This is a suit by appellee against the appellant to recover damages for personal injuries alleged to have been caused him by the negligence of appellant. The petition alleges that appellee was on the 8th day of April, 1902, struck and run over.by a street car operated by appellant over the public streets of the city of Galveston. The grounds of negligence alleged were that at the time of the accident the car was being run at a rapid and dangerous rate of speed, and was not under proper control, and that it was not equipped with a life-guard, or fender, on the front end of the car; and that the brake, or appliance for stopping the car, was not in good repair and working order; and that the motorman was negligent in not using ordinary care to check the speed of the car and get it under proper control when he saw, or might have seen, that the appellee was exposed to danger, and that he failed to keep a proper lookout. The failure to have the car equipped with a life-guard or fender was alleged to be a violation of a city ordinance of the city of Galveston, and it was also alleged to be negligence independently of the ordinance. It was alleged that the rate of speed at which the car was traveling was in violation of an ordinance of the city, and was also a dangerously rapid rate of speed, independently of the ordinance. The ordinance alleged to control the rate of speed of street cars was set up in the petition, but the court sustained a demurrer thereto, holding that the said ordinance had no application to street cars.

The injuries direct and consequential caused appellee by being struck and run over by said car are specifically alleged and damages are asked in the sum of $30,000.

Appellant answered by general and special exceptions (the one with reference to the said speed ordinance being sustained), general denial

and plea of not guilty and specially that plaintiff was guilty of contributory negligence which caused and contributed to his own injury in that he was deaf, a fact which was unknown to the employes of the appellant operating the car by which he was injured, and that he went upon the track of the appellant upon which the car was traveling at a point which was not a street crossing, so suddenly and unexpectedly, and in such close proximity to, and immediately in front of the advancing car, that it could not be stopped before it collided with the plaintiff, and he was injured although the motorman in charge of the car used every effort in his power and all the means at his command to stop the car, and that the plaintiff utterly failed to use any care or prudence to take note of his surroundings or to observe the approach of the car by means of his eyesight, although he was traveling on a portion of the street not commonly used or set apart for pedestrians.

The case was tried before a jury and resulted in a verdict and judgment on April 20, 1903, for plaintiff for $5000.

The evidence contained in the record is sufficient to sustain the following fact conclusions:

On the morning of April 8, 1902, appellee, who at that time was about 12½ years old, while crossing East Market Street in the city of Galveston was struck, knocked down and run over by a street car which was being operated by appellant over said street and was thereby injured in the manner alleged in the petition. At the time of his injury appellee was crossing said street in a diagonal direction from the northeast to the southwest and the car which struck him was running along the street from west to east. The point at which the collision occurred was sixty or seventy feet west of the west line of Fourteenth Street, which street crosses Market Street at right angles. The car was being run at a rapid rate of speed, estimated by some of the witnesses at from fifteen to eighteen miles an hour, and was not stopped after it struck appellee until it had reached Fourteenth Street. The motorman who was operating the car observed appellee approaching the track and saw that he was oblivious to the approach of the car, but made no effort to lessen the speed of the car until just before the collision occurred and when it was too late to stop it in time to prevent its striking appellee. The brakes upon the car were in good condition and it might have been stopped within a distance of twenty-one feet if, as the motorman testified, it was not running at a speed exceeding four or five miles an hour. The motorman testified that after the car crossed Fifteenth Street, which street also crosses Market Street at right angles, 300 feet west from Fourteenth street, he saw appellee "coming angling across the street towards his home" and that "he thought the car was going to hit him." He does not say exactly how far the car was from appellee when he first observed him, but the testimony of other witnesses who heard the motorman sound his gong and halloa at the appellee show that the distance must have been not less than 150 feet. The appellee while crossing the street was engaged in the play of pitching up and catching a can of

baking powder which he was carrying home, and was so intent upon his sport that it was apparent to the witnesses who saw him that he did not observe the swiftly approaching car. He was so deaf as to be unable to hear the warnings given by the motorman and others and he did not know that the car was coming until it struck him; in fact he does not yet know from personal knowledge that he was struck by the car, he having been rendered unconscious by the force of the collision and not having regained his consciousness until some time after he was removed from the scene of the accident. If appellee had looked down the street just before he went upon appellant's track or at any time after he started across the street he would have seen the approaching car. Just before the car reached appellee he threw up the package with which he was playing and in running to catch it he ran on the track fifteen or twenty feet in front of the car. None of the employes of appellant operating the car knew that appellee was deaf. The testimony shows that appellee was a bright boy at school and there is no evidence tending to show that he had less general intelligence than the average boy of his age.

The only assignment presented in appellant's brief complains of the verdict of the jury as being unsupported by the evidence, in that all the evidence shows that appellee's injuries were caused by his contributory negligence.

It is unnecessary for us to determine the issue presented by this assignment because, conceding for the sake of argument that the evidence is such as would authorize this court to say that no other reasonable conclusion can be drawn therefrom than that appellee did not use ordinary care in going upon appellant's track without looking to see whether a car was approaching, we would not be authorized under the evidence to say that such negligence on his part was the proximate cause of his injury. The issue of discovered peril is clearly raised by the evidence. Appellant presents no assignment complaining of the manner in which that issue was submitted to the jury nor that the verdict of the jury thereon is not supported by the evidence. When appellant's motorman saw that appellee was not aware of the approach of the car and would probably run upon the track in front of it, the duty at once devolved upon him to use every means in his power, consistent with the safety of those upon the car, to prevent injury to appellee. The motorman admits that he saw appellee and "thought that the car would hit him." He excuses himself for not stopping the car by the plea that the brakes were out of order, but the overwhelming evidence shows that such was not the case. The brakes were in good condition and the car could have been easily stopped after appellee's peril was discovered, and the injury thus prevented. It is doubtless true that after the motorman saw appellee run upon the track just in front of the car and realized that the danger was imminent he used every effort to prevent the injury, but this did not meet the duty required of him. He should have begun to use every means in his power to prevent the injury as soon as he saw that it was probable and not waited until the danger became so imminent

that the injury could not have been averted. The negligent failure of the motorman to use ordinary care to prevent the injury after he saw appellee's danger is made apparent by his own evidence and that of all of the witnesses who saw the accident, which shows that his efforts to attract appellee's attention by sounding the gong and hallooing to him were unavailing. When he saw that appellee paid no attention to these warnings ordinary care on his part clearly required that he should at least have lessened the speed of the car and not have attempted to run by the appellee until satisfied that he was aware of the approach of the car. Texas & P. Ry. Co. v. Breadow, 90 Texas, 26; Sanches v. Railway Co., 88 Texas, 117; Texas & P. Ry. Co. v. Staggs, 90 Texas, 461; Kroeger v. Railway Co., 5 Texas Ct. Rep., 554; International & G. N. Ry. Co. v. Wear, 1 Gammel Law Journal, 539, 8 Texas Ct. Rep., 502.

We are of opinion that the evidence sustains the verdict of the jury, and the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.