500

## THOMPSON v. SISTI.
### No. 11974.

Court of Civil Appeals of Texas.
San Antonio.
Oct. 19, 1949.

Rehearing Denied Nov. 16, 1949.

John G. Stofer, Victoria, for appellant.

Edward L. Dunlap, Victoria, J. Barney Daniel, Victoria, Allen, Smith & Neal, Houston, for appellee.

NORVELL, Justice.

This action grew out of a railroad crossing collision in which Sammie Frank Sisti was killed. Suit was brought by Sisti's surviving wife, Theresa O. Sisti, and two minor children, Frank Sisti and Robert

Earl Sisti, who appeared herein by their next friend. The mother of Sammie Frank Sisti was also a party to the action but no recovery was allowed in her favor. The defendant was Guy A. Thompson, trustee for the St. Louis, Brownsville and Mexico Railway Company, appointed in accordance with the provisions of Section 77 of the Bankruptcy Act, 11 U.S. C.A. § 205. Liability was predicated upon the doctrine of discovered peril and judgment against the trustee was rendered upon special issue findings of a jury.

Appellant contends that a peremptory instruction should have been given in his favor and, in the alternative, says that the case was improperly submitted to the jury, in that the element of lack of probable extrication of the deceased from his perilous position was not submitted to the jury.

The principal authority relied upon by appellant is the case of Beatty v. Thompson, Trustee for St. Louis, Brownsville & Mexico Ry. Co., Tex.Civ.App., 176 S.W. 2d 795, in which this Court, upon somewhat similar facts, upheld a judgment rendered non obstante veredicto in favor of the trustee.

■ In considering appellant's first contention, we make our statement of the facts in accordance with the rule that the evidence must be viewed in the light most favorable to the prevailing parties below.

The collision took place about 2:45 o'clock in the afternoon of February 6, 1948. The crossing involved was situated in or near the town of Bloomington, Victoria County, Texas. The train, composed of a Diesel locomotive and five cars, approached the crossing from the west. Sisti was operating a large road maintainer or grader, which was about 27 feet long and 8 feet high. He attempted to cross the railroad track with his machine but some part of it hung up on the rails so that he was unable to negotiate the crossing. While the north rail was practically level with the surface of the road or street at the crossing, it appears that the south rail was about six inches above the road level.

It was a clear day and the enginemen on the locomotive had an unobstructed view of the crossing for a distance of over 2900 feet. The railroad track in the vicinity was practically straight and slightly uphill. When the train reached a point approximately 2900 feet from the place of collision, the trainmen commenced blowing the whistle of the locomotive. This whistle was blown continuously from this time on until about the time the collision took place.

No attempt was made to stop the train until shortly prior to the collision, and it proceeded some 225 feet further along the track after hitting the heavy road grader. There was evidence that the train could have stopped in safety within a distance of 350 to 400 feet.

For some time prior to the impact, Sisti was moving his grader back and forth for short distances. As one witness expressed it, "He just moved it like he would in a mud hole, trying to rock it out, rocking back and forth." The enginemen did not testify.

■ In view of the clear visibility, the continuous blowing of the whistle, the heavy road maintenance equipment involved, the futile attempts to get the grader off the track by "rocking" it, and the failure of the enginemen to testify, we are of the opinion that the trial judge was correct in permitting the case to go to the jury. Insofar as judgment as a matter of law is concerned, we believe the present case is distinguishable upon the facts from Beatty v. Thompson, Tex.Civ.App., 176 S.W.2d 795. The case of Texas & New Orleans Ry. Co. v. Goodwin, Tex. Civ.App., 40 S.W.2d 183, wr. ref., is more nearly in point. We overrule appellant's contention that he was entitled to an instructed verdict.

Omitting the issues of proximate cause and damages, the trial court's submission of the doctrine of discovered peril was as follows:

"Special Issue No. 1.

"Do you find from a preponderance of the evidence that the deceased, Sammie Frank Sisti, was in a position of peril at such a time before the collision of the train and the road maintainer that the engineer

502

of the train, by the use of all the means at his command and in safety to himself and the train he was operating and the occupants thereof, could have avoided the injury or death of Sammie Frank Sisti?

"Answer 'We do' or 'We do not'.

"We, the jury, answer, We do.

"If you have answered Special Issue No. 1, 'We do', and only in that event, then you will answer:

"Special Issue No. 2.

"Do you find from a preponderance of the evidence that the engineer operating defendant's locomotive discovered and realized the perilous position, if any, of Sammie Frank Sisti and the road maintainer which he was operating at the crossing in question in time so that, by the exercise of ordinary care upon his part, and with the means at hand and in safety to himself and the train he was operating and the occupants thereof, he could have avoided the injury to or death of Sammie Frank Sisti?

"Answer 'We do' or 'We do not'.

"We, the jury, answer, We do.

"If you have answered Special Issue No. 2, 'We do', and only in that event, then you will answer:

"Special Issue No. 3.

"Do you find from a preponderance of the evidence that the engineer operating defendant's locomotive, after the discovery and realization, if any, of the perilous position, if any, of Sammie Frank Sisti and the road maintainer which he was operating, failed to exercise ordinary care in the use of the means at hand, consistent with the safety of himself and the train he was operating and the occupants thereof, to avoid the injury to or death of Sammie Frank Sisti?

"Answer 'We do' or 'We do not'.

"We, the jury, answer, We do."

Appellant objected to the form of submission employed for the reason that the issues propounded by the trial court did not "inquire whether the operatives of defendant's train ever discovered or realized that the said Sammie Frank Sisti would not extricate himself from the perilous position he occupied prior to the collision."

As the issues relating to discovered peril were appellee's issues, appellant's objection (carried forward in the motion for new trial) efficiently raises the point in this Court. Rule 279, Texas Rules of Civil Procedure.

When raised by the evidence, the element of probable extrication from peril is an essential part of a discovered peril submission. Of course in cases where it is readily apparent upon the ascertaining of a person's perilous position, that there is no opportunity for extrication, it is unnecessary to submit an issue with reference thereto.

We think it well settled that one is not required to anticipate that a person in a place of danger will continue in such position when apparently he is able to and probably will extricate himself therefrom. One is not required to anticipate unusual or sub-standard behavior and, consequently, when raised by the evidence, the element of "probable extrication" is an essential part of a jury submission, in accordance with the discovered peril doctrine.

In the recent case of Texas & New Orleans Railroad Co. v. Grace, Tex.Civ.App., 204 S.W.2d 857, 859, the Beaumont Court of Civil Appeals said: "The law touching upon the doctrine of discovered peril does not make it the duty of the operative of a train or the driver of a truck or automobile to bring his vehicle to a stop every time he discovers a person on or near the track or highway in front of him. When such an operative of a train discovers a person on or approaching the track in front of it and realizes that he is in a perilous position *and further realizes that such person will not in all probability be able to extricate himself from such a perilous position,* it then becomes the duty of such operative to use all means at his command, consistent with his own safety and that of his passengers and crew, to avoid injury to the person in such perilous position, and his failure to use such means after such discovery and realization becomes negligence on the part of such operative. If the operator of the

train or vehicle does not make such discovery and achieve such realization in time to avoid the injury, the doctrine of discovered peril does not apply. Gulf, C. & S. F. R. Co. v. Phillips et al., Tex.Civ.App., 183 S.W. 806." (Italics ours.)

The above holding is in substantial accordance with the rule stated by the Supreme Court in Missouri-Kansas-Texas Ry. Co. of Texas v. Cunningham, 118 Tex. 607, 23 S.W.2d 343, 352, wherein it was said that: "In order that the issue of discovered peril may be raised, it is necessary to adduce evidence tending to show, first, that the deceased was in a position of peril, or would in reasonable probability enter a perilous situation; second, *that he could not, or would not, in all probability, extricate himself from the dangerous situation;* third, that after seeing the perilous situation of the deceased and realizing that he probably would not extricate himself therefrom, the operatives of the train fail to exercise ordinary care in the use of all the means at their command to avoid the collision; fourth, that, as a result of such failure, the deceased was injured." (Italics ours.)

The general American rule on the point is in agreement with the holdings above set out. In Caplan v. Arndt, 123 Conn. 585, 196 A. 631, 633, 119 A.L.R. 1037, it was held that before liability attaches under the doctrine, the injuring party must not only realize the perilous position of the injured party but must also be aware of the fact that "the party in peril either reasonably cannot escape from it, or apparently will not avail himself of opportunities open to him for doing so."

Appellee does not directly attack the above holdings but contends that the element of probable extrication was in substance covered by the issues submitted, and that a separate issue upon said element was not required.

This argument, as stated by appellee in her brief and upon oral argument, is that "a person would not be in a position of peril until the time for extrication had expired." Made applicable to the facts of this case, it is urged that Sisti was not in a position of peril when he and his vehicle were across the railroad track and the train was 2900 feet away. His position became perilous only when he could no longer save himself and, consequently, injury could only be prevented by action of appellant's enginemen. In other words, as long as he could get off the track in time to avoid injury he was not in a perilous position. When that time had passed, he was in a position of peril and the question then arose as to whether or not injury could have been avoided by appellant's employees.

In a sense it is true that a person upon a railroad track is not in danger of an approaching train if he is aware of the train's approach and is able to get off the track. There are numerous statements of the doctrine of discovered peril in Texas judicial opinions in which the element of probable extrication is implicitly treated as a part of the concept of a perilous position. For example, see Baker v. Shafter, Tex.Com. App., 231 S.W. 349.

In the case of Ft. Worth & D. C. Ry. Co. v. Shetter, 94 Tex. 196, 59 S.W. 533, 535, Mr. Justice Williams regarded the "position of peril" in a somewhat different way than does the appellant here. In the opinion mentioned, the Court said: "A person walking negligently along a railroad track in front of a moving train will surely be hurt unless the train stops, or he gets out of its way. In a sense he may be said to be in danger, but those controlling the train are not required to assume that, by his negligent failure to act, he will remain in danger. It is only when they have realized that he cannot or will not get out of the way that the duty of averting a collision arises."

It is axiomatic that a special issue submission should be fair to the parties and readily understandable to a jury. In applying this rule, we believe appellee's contention should be rejected and the suggestion of Judge Williams should be adopted; i. e., a person should be regarded as being in danger if he is in a position where injury will result unless he or the person controlling the potentially injuring agency does something to avoid it.

We do not believe that Special·Issue No. 1 given in this case would be generally understood as embracing the element of probable extrication. At least, it is not clear that it does. The usual and customary method of inquiry is to ask the primary question of whether or not the plaintiff (or the defendant, as the case might be) was in a position of peril shortly prior to the collision and to follow this with inquiries as to whether or not the defendant discovered the position of peril of plaintiff and realized that·he probably would not or could not extricate himself therefrom, etc., 1 Stayton's Texas Annotated Forms 250, § 499, following suggestions contained in Missouri-Kansas-Texas Ry. Co. of Texas v. Cunningham, 118 Tex. 607, 23 S.W.2d 343. We see no objection to this form of submission which provides a direct submission of the element of probable extrication. The opinion in Beatty v. Thompson, Trustee, Tex.Civ.App., 176 S.W.2d 795, heretofore referred to, also contains an example of a direct submission of the issue of probable extrication based upon facts somewhat similar to those disclosed by the record before us.

Upon an analysis of the special issues submitted, we are unable to agree with appellee's contention that the element of probable extrication, although not submitted directly was, nevertheless, submitted in substance. It seems to us that the jury could have properly returned an affirmative answer to Special Issue No. 1, if they believed that appellant's enginemen discovered that Sisti was.in a perilous position when the train was 2900, 2000 or 1000 feet from the crossing, or at any point over 400 feet distant from the point of collision. The same may be said of Special Issue No. 2. If we give effect to the inference that the whistle was blown because the enginemen saw the grader across the track, then it could be said that the enginemen knew of Sisti's position when the locomotive was 2900 feet from the crossing where the collision·occurred. Obviously, at this time the train could be stopped before it reached the crossing, but·this failure to stop does not in itself establish liability. The duty to use all the means at hand consistent with safety to avoid injury did not arise until the trainmen realized that Sisti could not or would not in all probability extricate himself from his perilous position in time to avoid injury.

Under the submission adopted, appellee failed to secure a jury finding upon an essential element of her theory of recovery. We hold that the court below erred in overruling appellant's objection to the issues as given and in failing to submit the element of probable extrication.

Other matters raised by the briefs need not and probably will not arise upon another trial. For the error pointed out the judgment appealed from is reversed and the cause remanded.

SMITH, C. J., absent.